# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MERVYN RUTLEY**
    **Petitioner-Defendant,**

 **v.**             **Case No. 12-C-841**
                  **(Criminal Case No. 10-CR-176)**

**UNITED STATES OF AMERICA**
    **Respondent-Plaintiff.**

---

## RULE 4 ORDER

 Petitioner Mervyn Rutley moves pursuant to 28 U.S.C. § 2255 to vacate his 72 month sentence for bank fraud and related offenses, arguing that his trial lawyers provided ineffective assistance of counsel. The Rules Governing Section 2255 Proceedings require the district court to conduct a preliminary review of such a motion:

> If it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response . . . .

Rule 4(b), Rules Governing § 2255 Proceedings.

## I. BACKGROUND

 The government charged petitioner with eleven counts of bank fraud, one count of wire fraud, and twelve counts of aggravated identity theft. The charges arose out of a fraud scheme petitioner devised and executed, which continued from 1996 to 2009 and involved identity theft, unauthorized transfers from other people's bank accounts, and the continued receipt of veteran's benefits awarded to defendant's deceased father. Specifically, petitioner opened accounts in the names of others – including an Illinois woman (Q.N.) who did not know him and

his deceased father (Elvis Young) – which he then used for his own purposes, including significant gambling at a Milwaukee casino.  He also opened an account into which his father's benefits were deposited, a total of more than $126,000 over thirteen years. He further managed to access the bank accounts of two couples (the Johnson's and the Roberts'), transferring their funds to himself.

A jury convicted petitioner of all twenty-four counts, and I sentenced him to 48 months on the fraud counts and 24 months consecutive on the identity theft counts for a total of 72 months in prison.  I further ordered him to make restitution in the amount of $205,247.76. Petitioner appealed, but his appointed counsel moved to withdraw under Anders v. California, 386 U.S. 738 (1967).  The Seventh Circuit granted counsel's motion to withdraw and dismissed the appeal as frivolous.  United States v. Rutley, No. 11-2155, 2012 WL 1950408 (7th Cir. May 31, 2012).

## II.  DISCUSSION

### A.    Applicable Legal Standards

Section 2255 permits a federal prisoner to attack his sentence on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Petitioner alleges a violation of his Sixth Amendment right to the effective assistance of counsel, which may be raised under § 2255.  See Massaro v. United States, 538 U.S. 500, 504 (2003).

Petitioner "bears a heavy burden" to establish an ineffective assistance of counsel claim.

2

Menzer v. United States, 200 F.3d 1000, 1003 (7th Cir. 2000). He must show (1) that his counsel's performance fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). The court's review of a lawyer's performance is highly deferential, reflecting a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Yu Tian Li v. United States, 648 F.3d 524, 527-28 (2011). Petitioner must come forward with specific acts or omissions of his counsel that constitute ineffective assistance under prevailing norms. Hutchings v. United States, 618 F.3d 693, 697 (7th Cir. 2010). In order to establish prejudice, petitioner must show that there is a reasonable probability that, but for his counsel's mistakes, the result of the proceedings below would have been different. Strickland, 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. Id. While petitioner need not show that counsel's deficient conduct more likely than not altered the outcome in the case, id. at 693, he must provide more than speculation that the verdict or sentence were tainted by counsel's deficiency. See Brown v. Finnan, 598 F.3d 416, 424-25 (7th Cir. 2010); George v. Smith, 586 F.3d 479, 485-86 (7th Cir. 2009).

The district court may deny a § 2255 motion alleging ineffective assistance without holding a hearing or requiring the government to respond if the motion rests on conclusory or speculative allegations rather than specific factual allegations. Gallo-Vasquez v. United States, 402 F.3d 793, 797 (7th Cir. 2005). In order for a hearing to be granted, the motion must be accompanied by a detailed and specific affidavit showing that the movant has actual proof of the allegations going beyond mere unsupported assertions. Prewitt v. United States, 83 F.3d 812, 819 (7th Cir. 1996). The court may likewise deny summarily a § 2255 motion resting on factual allegations that are contrary to the record. See Eaton v. United States, 458 F.2d 704,

3

706 (7th Cir. 1972); see also Cooper v. United States, 378 F.3d 638, 641-42 (7th Cir. 2004).

## B.    Analysis

Petitioner alleges that his lawyers provided ineffective assistance at every stage of the proceedings in the district court.[1]  His allegations, which span three single-spaced pages, consist primarily of conclusory statements, with virtually no evidentiary support or legal analysis offered.  Although pro se submissions are liberally construed, even unrepresented petitioners must make sufficiently specific claims, see, e.g., United States v. Johnson, 878 F. Supp. 1135, 1137 (N.D. Ill. 1995), and develop their arguments, see, e.g., Anderson v. Hardman, 241 F.3d 544, 545 (7th Cir. 2001), which petitioner fails to do.  Nevertheless, I will address each of his claims in turn.[2]

### 1.    Ground One: Ineffective Assistance Pre-trial

Petitioner first alleges that his lawyers provided ineffective assistance by "fail[ing] to submit a motion to suppress evidence."  (Case No. 12-C-841, Motion [R. 1] Attach. 1 at 1, Ground 1 ¶ A.)  In order to succeed on this claim, petitioner must show that the motion his

---

[1]Petitioner was represented by an attorney from Federal Defender Services, Thomas Wilmouth, from his September 15, 2010 arraignment through the motions period.  Attorney Wilmouth left the Defender's office, and new counsel from the CJA panel, Laurence Moon, was appointed to represent petitioner on November 17, 2010.  Attorney Moon represented petitioner through trial and sentencing.  Petitioner was represented by a third lawyer, L. Lee Smith, on direct appeal, but petitioner does not contend that Smith provided ineffective assistance.

[2]Petitioner sets forth his claims in a memorandum attached to his motion.  He specifies four grounds for relief based on ineffective assistance, with each ground containing lettered sub-claims.  For ease of reference, I will follow his numbering/lettering in screening the motion.  In the attached memorandum, petitioner also raises a fifth ground for relief alleging an unconstitutional search and unlawful arrest.  Although this claim is defaulted – and perhaps not cognizable under § 2255 as an independent claim (as opposed to an aspect of ineffective assistance), see Owens v. United States, 387 F.3d 607, 609 (7th Cir. 2004) – I will also address it.

4

lawyers failed to file was meritorious.  Shell v. United States, 448 F.3d 951, 955 (7th Cir. 2006).

He fails to do so, offering no specifics regarding a suppression motion; he does not even

identify the evidence he believes should have been suppressed.[3]

Petitioner next alleges that counsel "failed to request a copy of arrest records of

01/12/2009 with no prosecution per ADA Pat McGowan on 01/14/2009 while petitioner was not

released until 01/16/2009."  (Id. ¶ B.)  However, he fails to explain the significance of these

records or the decision of the state prosecutor not to charge him.[4]  Without some indication of

the use to which these records could have been put, or how they could have affected the

outcome, the claim fails.

Petitioner further contends that his lawyers failed to review the indictment with him or

submit a motion to dismiss.  (Id. ¶ C.)  He states that the "allegations common to all counts"

section of the indictment "is an expansion of the so-called scheme, as specific items only apply

to certain counts and not other[s]."  (Id.)  However, he fails to explain how this made the

indictment defective or otherwise subject to dismissal under the broad standard used to

determine sufficiency.  See generally United States v. Stout, 965 F.2d 340, 344 (7th Cir.

---

[3]The issue of evidence suppression came up on direct appeal, with appellate counsel concluding that it was better raised collaterally.  2012 WL 1950408, at *1.  Petitioner does not in his § 2255 motion indicate whether he refers to the same evidence discussed on appeal. In any event, the Seventh Circuit found no evidence of any Fourth Amendment violations in the collection of evidence in this case.  Id. ("We agree with counsel that it would be frivolous for Rutley to argue on direct appeal that the evidence against him should have been suppressed, though we are not persuaded that Rutley would have better luck with this argument in a collateral proceeding.  There simply is no indication that the searches in question were unconstitutional.").

[4]Petitioner attaches to his motion a police report and arrest records indicating that the state did not charge him following his January 2009 arrest.  (Motion Ex. 1003, 1004.)  However, he does not explain how these reports bolster an ineffective assistance claim.

5

1992).[5]  Further, the jury was instructed to consider each count and the evidence relating to it separately.  (Case No. 10-CR-176, Jury Instructions [R. 35] at 37.)

Petitioner next contends that his lawyers failed "to have handwriting exemplars analyzed, which would have proved hand writing item[s] were not petitioner[']s."  (Motion Attach. 1 at 1, Ground 1 ¶ D.)  In order to establish prejudice based on counsel's alleged failure to test or investigate, petitioner must supply sufficiently precise information regarding what the omitted testing or investigation would have produced and how the results could have aided his defense. See, e.g., United States v. Farr, 297 F.3d 651, 658-59 (7th Cir. 2002); Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002).  A bald claim that the evidence would have been favorable will not suffice; that is all petitioner offers here.[6]

Petitioner next claims that his lawyers failed "to secure subpoenaed video surveillance from [the] government that would have shown that petitioner did not commit the crimes alleged in counts 15, 16, 19, 21, 22, 23, 24."  (Id. ¶ E.)  However, petitioner fails to specify the contents of these videos or to explain how they demonstrate his innocence.  He indicates that the videos are referenced in an investigative report from Veteran's Affairs, but the report attached to his motion indicates that the lead Postal Inspector viewed surveillance tapes from Potawatomi Casino, which showed that petitioner completed ATM transactions with a card in his father's

---

[5]Petitioner seems to suggest that the allegations regarding his improper collection of his father's VA benefits did not relate to any specific counts, but the Seventh Circuit found otherwise on direct appeal.  2012 WL 1950408, at *3 ("Rutley overlooks that three of the bank-fraud counts charged him with withdrawing money from an account in his father's name ending in the number 3611, which is the account he opened to receive direct deposits from the VA.  By withdrawing that money, Rutley fraudulently obtained property that was under the bank's control in violation of the bank fraud statute, 18 U.S.C. § 1344.").

[6]At trial, petitioner's counsel established on cross-examination that the investigating postal inspectors did not perform hand writing analysis.  (Trial Tr. at 255-56.)

6

name.  (Motion Ex. 1000 at 6.)  There is no reasonable probability of a different result based on these videos, and petitioner fails to otherwise explain how they would have aided his defense.

Petitioner next argues that his lawyers failed to investigate potential witnesses or call any to testify.  (Motion Attach. 1 at 1, Ground 1 ¶ F.)  He then lists various individuals and what he believes they would have said.  (Id. ¶ F.1-9.)  However, petitioner does not even allege, much less present any evidence, that he told his lawyers to contact these witnesses and they refused to do so, or that counsel should have somehow found them regardless.  See, e.g., Farr, 297 F.3d at 658 ("An ineffective assistance of counsel claim cannot rest upon counsel's alleged failure to engage in a scavenger hunt for potentially exculpatory information with no detailed instruction on what this information may be or where it might be found."); see also Allen v. Secretary, Florida Dept. of Corrections, 611 F.3d 740, 752 (11th Cir. 2010) (stating that, in evaluating the reasonableness of a defense attorney's investigation, the court weighs heavily the information provided by the defendant); U.S. ex rel. Kleba v. McGinnis, 796 F.2d 947, 958 (7th Cir. 1986) (finding no ineffective assistance where the defendant failed to provide counsel with sufficient information to pursue the issue).

Further, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit.  A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."  United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnote omitted).  Petitioner presents no affidavits from any of the listed individuals, instead offering his own assertions about what they would have said.  This does not suffice.

Finally, even if these witnesses would have testified as petitioner now claims, there is

7

no reasonable probability of a different result.  Petitioner states that "Lisa Draper would have testified that her checks were not stolen and she did write them."  (Id. ¶ F.1.)  The government did not allege that these checks were stolen; the evidence regarding Lisa Draper was that petitioner deposited into one of his accounts checks drawn on her closed account.  The government introduced this evidence as proof of the fraud scheme alleged in the indictment, part of which was that petitioner deposited worthless checks from a closed account into accounts he created.  (Trial Tr. at 95-99; Indictment at 3, ¶ 7.)  Whether Draper actually wrote these checks would not have been relevant.  Further, this evidence represented a minuscule part of the government's case, which was overwhelming.[7]

Petitioner states that "Steve Wilson [a Veterans Affairs special agent] would have testified that account[s were] opened by the bank[s] themselves and not by an individual." (Motion Attach. 1 at 1, Ground 1 ¶ F.2.)  As evidence, he refers to Wilson's December 18, 2009 investigative report, which he attaches to his motion.  (Motion Ex. 1000.)  However, I see nothing in that report supporting such a claim.  Moreover, the government at petitioner's 2011 trial presented overwhelming evidence that petitioner used and controlled the bank accounts at issue.  Petitioner also states that Wilson would have testified that the theft of government funds statute is 18 U.S.C. § 641, under which petitioner was not charged.  The court does not permit lay witnesses to testify as to legal conclusions.  See United States v. Caputo, 517 F.3d 935, 942 (7th Cir. 2008).  In any event, that petitioner could have also been charged under § 641 does not make the government's use of other statutes improper.  Finally, petitioner states that Wilson "would have testified that through their independent investigation that they were

_____

[7]Petitioner's counsel established on cross-examination that the lead inspector never spoke to Lisa Draper.  (Trial Tr. at 256.)

8

not aware of who negotiated the checks." (Motion Attach. 1 at 2, Ground 1 ¶ F.2.)  As support he cites Wilson's September 2009 report, in which Wilson lists the benefits paid to defendant's deceased father and indicates that "as of this date it is unknown who negotiated these checks." (Motion Ex. 1001.)  The government through subsequent investigation learned that defendant was responsible for taking this money, as it proved at trial in 2011.

Petitioner next states that: "Harlan Peterson US Bank would've testified petitioner was not the male before him to open an account in the name of an Asian female."[8]  (Motion Attach. 1 at 2, Ground 1 ¶ F.3.)  Petitioner presents no statement from Peterson or other evidence supporting this claim.  Nor does he explain how Peterson's proposed testimony could have affected the result in this case.  The government at trial showed that petitioner used US Bank accounts in the name of Q.N. – but listing petitioner's address – to effectuate the scheme (see Trial Ex. 5 & 6; see also Trial Tr. at 234), but it did not contend that petitioner opened these (or any other accounts) in-person (see, e.g., Trial Tr. at 269).

Petitioner indicates that "Lori Banach would've testified petitioner did not live alone" in the apartment owned by the Johnson's (one of the couples from whom petitioner stole money).[9] (Id. ¶ F.4.)  The document petitioner cites in support (Ex. 1002 to his motion) lists just one tenant – Mervyn Rutley – but the trial testimony suggested that two other men may have lived with petitioner during the time of the fraud scheme.  (Trial Tr. at 257-58.)  I am left to speculate how Banach's testimony would have helped petitioner; to the extent that her proposed

---

[8]Petitioner here apparently refers to Q.N., who immigrated to the United States from Vietnam.  (Trial Tr. at 46.)

[9]Banach managed the apartment building owned by the Johnson's in which petitioner once resided.  (Trial Tr. at 22.)

9

testimony may have permitted petitioner to argue that someone else may have stolen the Johnson's banking information while living in their building, permitting the unauthorized transfers alleged, the evidence in the record already allowed that. There is no reasonable probability of a different outcome based on this proposed testimony.

Petitioner next states: "Mail carriers at 3880 N. 18th St. and 4058 N. 7th St. would have testified any mail not addressed to Mervyn Rutley was not to be delivered and that I returned mail to them on several occasions." (Motion Attach. 1 at 2, Ground 1 ¶ F.5.) Petitioner does not specifically identify any such mail carriers, much less present affidavits or statements from them; nor does he explain how such testimony could have affected the result.[10]

Petitioner next states: "Clerks at Potawatomi Casino would've testified while petitioner was a frequent customer he has never presented an ID that was not in his name. Surveillance video would support this also." (Id. ¶ F.6.) Again, petitioner fails to name any specific individual who would provide such testimony or to provide evidence regarding surveillance video. Further, he fails to explain how his not using a fake ID to gamble may have tended to negate any of the other evidence of guilt.

Petitioner also states that "Rosie Cobb Milwaukee Check Cashers told inspector she recognized the clerks signature who negotiated check and would have testified petitioner was a frequent customer and their records would have made known what transactions were

---

[10]The US Bank accounts in the name of Q.N., which petitioner used to effectuate the scheme, listed the 3880 N. 18th Street address. (Trial Ex. 5 & 6.) In a post-arrest statement, petitioner denied receiving mail for Q.N. at 3880 N. 18th Street. (Trial Tr. at 103.) The evidence at trial also showed that petitioner submitted a change of address for "Q.N." from the N. 18th Street address to a PO Box in Chicago, which he also used to execute the scheme. (Trial Tr. at 242-43.) Given this evidence, there is no reasonable probability that any testimony from mail carriers along the lines petitioner suggests would have produced a different result.

10

completed by petitioner." (Id. ¶ F.7.) Presumably, petitioner draws this statement from Wilson's investigative report, which indicates that he spoke to Cobb on November 12, 2009. (Motion Ex. 1000.) But petitioner does not even allege, much less present any evidence, that the records from this check cashing establishment would have been useful to his defense (such as showing that he did not cash his deceased father's benefit checks when they still came in paper form).

Petitioner next states: "Callahan Funeral Home staff would've testified $255 for burial of Elvis Young petitioner's father came from Veteran Affairs[.] This would have proved petitioner notified about the death." (Motion Attach. 1 at 2, Ground 1 ¶ F.8.)[11] As with his previous claims, petitioner does not specifically identify a witness from this establishment, and he provides no evidence in support of his assertion. Nor does he explain how such testimony might have changed the outcome of this trial. That the VA could have been more diligent in stopping Mr. Young's benefits after his death did not provide petitioner license to continue cashing the checks. See United States v. Serfling, 504 F.3d 672, 679 (7th Cir. 2007) (noting that "the perpetrator of a fraud may not defend himself by blaming the victim for being duped" and excluding testimony to that effect).

Finally, petitioner states: "Home Depot, VA Credit Union, Guaranty Bank and all businesses victimized have video surveillance and a review would have shown that petitioner did not commit these crimes[.] At minimum counsel should have requested to see if they were available." (Motion Attach. 1 at 2, Ground 1 ¶ F.9.) A bald assertion that evidence counsel

---

[11]At trial, petitioner's counsel's asked a VA witness whether the VA made payments on behalf of Elvis Young to Callahan Funeral Home in Chicago; her file showed no such payments. (Trial Tr. at 92.)

11

failed to obtain would have been favorable will not suffice to support an ineffective assistance claim. See United States v. Lathrop, 634 F.3d 931, 939 (7th Cir.) (holding that when a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, he has the burden of providing the court with specific information as to what the investigation would have produced; a generalized claim that additional testimony would have made a difference is insufficient), cert. denied, 132 S. Ct. 206 (2011).

Petitioner's first ground for relief must therefore be rejected.

### 2.    Ground Two: Ineffective Assistance at Trial

Petitioner first complains that counsel did not at trial cross-examine Postal Inspector Girardot, the lead case agent, regarding his recognizing petitioner completing certain ATM transactions on subpoenaed video. (Motion Attach. 1 at 2, Ground 2 ¶ A.)  Petitioner fails to specify what favorable testimony would have been elicited had counsel questioned Girardot on this issue.[12]    See United States v. Rodriguez, 53 F.3d 1439, 1449 (7th Cir. 1995) ("Rodriguez has explained neither what Santos's responses to further cross-examination might have revealed nor how those responses might have affected the result.  Accordingly, his ineffective assistance of counsel claim must fail.").

Petitioner next states: "Examination of Sally Hanson [sic] testimony that Elvis Young was in hospital when he died[.]  This information is conflicting with death certificate entered into evidence." (Id. ¶ B.)  Presumably, petitioner here refers to a trial witness from the Department of Veterans Affairs named Tammy Hansen.  (Trial Tr. at 71-72.)   Hansen testified, after viewing Young's death certificate (Trial Ex. 20), that it appeared Young died in a hospital (Trial

---

[12]While this issue is referenced in Wilson's report, Girardot offered no testimony about subpoenaed videos during the trial.

Tr. at 87, 92).[13]  She further testified that hospitals were generally not reporting agencies to the VA regarding the death of a veteran, unless it was a VA Hospital.  (Trial Tr. at 92.)  Petitioner fails to explain what sort of cross-examination counsel should have conducted or how the results of such examination could have affected the result.  As indicated above, to the extent that petitioner may have wanted to argue that the VA should have been more vigilant in stopping his father's benefits after his death, such an argument would have gone nowhere.  See Serfling, 504 F.3d at 679.

Petitioner next states: "Examination of the Johnsons concerning ownership of property[.]  No mention of Jacobsen Properties."  (Motion Attach. 1 at 2, Ground 2 ¶ C.)  As discussed above, the Johnsons owned an apartment building (located on 29th and Juneau in Milwaukee) in which petitioner once lived; petitioner later effected unauthorized transfers from their bank account.  (Trial Tr. at 15-18.)  Although he does not explain this claim, I can only assume that petitioner refers to the fact that the residential lease he signed for this apartment listed the landlord as "Jacobson Properties."  (Trial Ex. 28.)  Mrs. Johnson testified that petitioner was a tenant of her's pursuant to this lease (Trial Tr. at 21), and I fail to see the significance of any cross-examination regarding "Jacobson Properties."

Petitioner next states: "No objections to handwriting documents, counsel could've requested a handwriting expert to testify."  (Motion Attach. 1 at 2, Ground 2 ¶ D.)  As indicated above, in order to succeed on a claim that counsel provided ineffective assistance in failing to call a witness, the defendant must explain what the witness would have said and how it could have affected the outcome; petitioner does neither.

_____

[13]It is difficult to make out what is printed in the "hospital or other institution" block on the death certificate.  The form does appear to indicate Mr. Young was "DOA."  (Trial Ex. 20.)

13

Petitioner next faults counsel for stipulating to certain bank records and that the deposits of the financial institutions at issue were insured by the Federal Deposit Insurance Corporation. (Id. ¶ E; see also Trial Tr. at 9.)  Counsel regularly make such stipulations, and petitioner fails to show that this was other than reasonable trial strategy.[14]  See, e.g., Castillo v. United States, No. 07 Civ. 2976, 2010 WL 3912788, at *8 (S.D.N.Y. Sept. 8, 2010) (finding that stipulation to FDIC-insured status was reasonable, even though it satisfied one of the elements of the crime). Petitioner states that not all banks are FDIC insured, but he does not even allege, much less present any evidence, that the banks involved in his case were not so insured, such that counsel's stipulation in his case prejudiced the defense.

Finally, petitioner faults counsel for not making an opening statement to make the "jury aware of subpoenaed video, and handwriting exemplars that were not analyzed." (Motion Attach. 1 at 2, Ground 2 ¶ F.)  Petitioner makes no showing that counsel's decision to reserve his opening statement was other than reasonable trial strategy.  Nor does he make any showing of prejudice: he does not specify the video he refers to, and counsel did through questioning of witnesses make the jury aware that the government did not perform hand writing analysis.  (Trial Tr. at 255-56.)

Petitioner's second ground for relief accordingly fails.

**3.      Ground 3: Ineffective Assistance Post-Trial and Prior to Sentencing**

Petitioner first states that counsel failed to review the PSR with him.  He contends that review would have shown that the 2-level enhancement for more than 10 victims was not applicable, and that the loss figure contained interest and fees. (Motion Attach. 1 at 2, Ground

---

[14]I indicated as much during the trial.  (Trial Tr. at 71-72.)

14

3 ¶ A.)  A lawyer's unreasonable failure to identify and bring to the court's attention an error in the court's guideline calculations that results in a longer sentence may constitute ineffective assistance.  United States v. Jones, 635 F.3d 909, 916 (7th Cir. 2011).  However, the record of this case shows that counsel did review the PSR with petitioner (Sen. Tr. at 2), and petitioner fails to explain how the enhancements for number of victims and loss were  improper. At the sentencing hearing, the probation officer indicated that he specifically told the victims to omit fees and finance charges from their loss statements.  (Sen. Tr. at 7-8.)

I further note that trial counsel did object, albeit in general terms, to the victim and loss information in the PSR.  I overruled the objections.  (See Sen. Tr. at 4-5; PSR addendum.) Petitioner could have raised (and, regarding the loss calculation, did raise) his argument(s) on direct appeal.  In deciding petitioner's direct appeal, the Seventh Circuit stated: "As counsel notes, the district court properly calculated Rutley's imprisonment range at 46 to 57 months for the fraud counts (reflecting a base offense level of 7, increased by 12 levels for the loss amount and 2 levels because there were more than 10 victims, combined with a criminal history category of III) and 24 months for the identity-theft counts." Rutley, 2012 WL 1950408, at *2. The court of appeals rejected petitioner's pro se arguments regarding loss and restitution. Id. at *2-3.  Petitioner does not now contend that his appellate counsel provided ineffective assistance in agreeing to the guideline range, further dooming his claim.   See Swanson v. United States, No. 11-2338, 2012 WL 3590857, at *1 (7th Cir. Aug. 22, 2012) (denying § 2255 motion challenging trial counsel's assistance where trial counsel failed to develop but did not abandon a sentencing objection, and appellate counsel failed to raise the objection on direct appeal).

Petitioner next alleges that counsel failed to communicate with him regarding the

15

number of victims, allowing an enhancement even though some did not suffer monetary loss. (Motion Attach. 1 at 2, Ground 3 ¶ B.)  Again, however, petitioner fails to specifically identify how the PSR erred in including this enhancement.[15]  As noted, the Seventh Circuit on petitioner's direct appeal found the guideline range correctly calculated.

Petitioner next contends that counsel failed to question why ¶ 66 of the PSR showed an offense level of 19, while the court used level 21.  (Id. ¶ C.) Paragraph 66 contains a typographical error; the correct level, 21, appears in ¶¶ 63 and 124.  (PSR ¶¶ 63, 124.) Petitioner suffered no prejudice based on this typo.

Petitioner next faults counsel for "failure to have PSR accurate for submission to courts." (Motion Attach. 1 at 2, Ground 3 ¶ D.)  Such a vague, conclusory claim fails as a matter of law.

Petitioner also faults counsel for submitting objections that "were not descriptive," resulting in an increase in his offense level and criminal history.  (Id. ¶ E.)  But petitioner also fails to provide specifics; nor does he explain how any of the objections he wanted filed would have changed the guideline range.

Petitioner's third ground for relief must be rejected.

### 4.      Ground 4: Ineffective Assistance at Sentencing

Petitioner first faults counsel for failing to object to his criminal history points.  (Motion Attach. 1 at 2-3, Ground 4 ¶ A.)  He notes that, in a bond motion filed on September 30, 2010,

---

[15]Because petitioner does not develop his claim regarding the number of victims enhancement, it is difficult to evaluate.  Petitioner might be referring to the fact that while the PSR identified fifteen victims (PSR ¶¶ 38-52, 59), only nine were listed as being owed restitution (PSR ¶¶ 132).  However, the Seventh Circuit has concluded that the "victims" countable under U.S.S.G. § 2B1.1(b)(2) include persons whose losses were reimbursed, United States v. Panice, 598 F.3d 426, 433 (7th Cir. 2010), such as the Johnson's and the Roberts' in this case.

16

his first lawyer stated that his prior convictions were too old to score under the guidelines. (See R. 8 at 6.) That was incorrect. Petitioner raised this issue on direct appeal, and the Seventh Circuit rejected the argument:

> . . . Rutley addresses a possible miscalculation of his criminal-history category, pointing out that the convictions for which he received criminal-history points (deceptive practices in 1991, battery in 1992, battery and resisting arrest in 1992, theft of movable property in 1995, and forgery in 1996) were more than ten years old when he was arrested in 2009. He correctly notes that a sentence of imprisonment of one year or less is not to be counted if it was imposed more than ten years before the commencement of the offense for which the defendant is being sentenced. See U.S.S.G. § 4A1.2(e); United States v. Carroll, 110 F.3d 457, 462 (7th Cir. 1997). But Rutley was convicted of a fraud scheme that dated back to 1996 when his past convictions were less than ten years old; it would be frivolous to challenge their inclusion in the calculation of his criminal history category.

2012 WL 1950408, at *3.

Petitioner next faults counsel for failing to contact local authorities to obtain accurate disposition information regarding the prior convictions scored in his PSR. He contends that a showing would have proved that he was not on probation or parole at the time of the instant offense, producing 2 criminal history points under U.S.S.G. § 4A1.1(d). (Motion Attach. 1 at 3, Ground 4 ¶ B.) At sentencing, counsel objected to the 2 points under U.S.S.G. § 4A1.1(d) recommended in ¶ 80 of the PSR, arguing that petitioner was not on probation at the time he committed the instant offense. (Sen. Tr. at 2-3.) I responded that, even without these 2 points, petitioner fell in criminal history category III. (Id. at 3.) Thus, even if he could show that these points should not have been attributed, the range would be the same. But petitioner makes no such showing, in any event. He presents no evidence from local authorities regarding any of the prior cases listed in the PSR. He also continues to claim, despite what the Seventh Circuit said (quoted above), that the instant offense was committed on 11/22/2006. Count one

17

carried that offense date, but under the guidelines what matters is the date of "commencement of the instant offense." U.S.S.G. § 4A1.2(e)(2). Petitioner commenced the scheme at issue in this case in 1996.

Petitioner also includes in this claim several bullet points regarding his prior record, but he fails to demonstrate any scoring errors. He indicates that his 1991 offense was conditionally discharged. (See PSR ¶ 71.) Such sentences score under the guidelines. E.g., United States v. Zuniga-Lazaro, 388 F.3d 308, 315 (7th Cir. 2004). Petitioner indicates that his 1992 crime was stricken off. The PSR lists three crimes from 1992, scoring two of them. (PSR ¶¶ 73-75.) Petitioner does not specify which offense he refers to, and he presents no evidence that these cases did not result in convictions. A defendant cannot challenge a PSR with a bare denial, not at sentencing, see United States v. Mustread, 42 F.3d 1097, 1101-02 (7th Cir. 1994), and certainly not on collateral review, see Galbraith v. United States, 313 F.3d 1001, 1009 (7th Cir. 2002). Petitioner states that the 1995 crime was dismissed. Presumably, he refers here to his conviction for theft, on which the court sentenced him to 4 months jail, stayed for one year probation, in 1997. (PSR ¶ 76.) Again, petitioner presents no evidence to contradict the PSR.[16] Finally, petitioner states that his sentence for the 1996 forgery conviction was 24 days jail; the PSR indicates that he was originally sentenced to 30 months probation, with 48 days jail (time served). (PSR ¶ 77.) The PSR scores 1 criminal history point for this case, which would be correct whether the sentence was 24 days or 48.

Petitioner next states that counsel failed to submit accurate restitution information to the court. (Motion Attach. 1 at 3, Ground 4 ¶ C.) At sentencing, petitioner's counsel raised an

---

[16]For what it's worth, I checked CCAP (Wisconsin's Consolidated Court Automation Program), which confirms that petitioner was convicted of theft in this case.

issue with restitution, specifically that some of the victims appeared to have included finance charges. (Sen. Tr. at 5-6.) The probation officer indicated that the victims were told not to include interest, but I nevertheless held the restitution determination open for 90 days so counsel could submit a written challenge. (Sen. Tr. at 8-9.) Counsel did not submit anything, so I issued an order setting restitution as indicated in the PSR. (Order Setting Restitution [R. 53].) Petitioner does not now explain how the restitution is wrong, so I cannot find any prejudice based on counsel's omission.[17]

Petitioner next states that the guideline errors he alleges were significant because I imposed a within-range sentence. (Motion Attach. 1 at 3, Ground 4 ¶ D.) However, petitioner fails to demonstrate any errors in criminal history, number of victims, loss/restitution, or otherwise.

Petitioner argues that counsel failed to ask for the lowest sentence possible. (Id. ¶ E.) In fact, counsel did ask for the lowest legal sentence – "approximately two years." (Sen. Tr. at 13.) Petitioner states that merely asking for a sentence of 2 years was not appropriate without requesting a downward departure. Counsel asked the court to impose a below guideline sentence based on the 18 U.S.C. § 3553(a) factors (Sen. Tr. at 10), which was the proper way to approach the issue. See, e.g., United States v. Johnson, 612 F.3d 889, 896 (7th Cir. 2010) (explaining that the concept of departures is obsolete, and that district courts may impose non-guideline sentences based on the § 3553(a) factors, without adherence to guideline departure provisions). As petitioner acknowledges, his 18 U.S.C. § 1028A convictions required a sentence of 2 years, consecutive to any other sentence. Thus, counsel

---

[17]The Seventh Circuit also addressed this issue on direct appeal, finding no error in the restitution calculation. 2012 WL 1950408, at *3.

19

could not have asked for less than that.

Petitioner alleges that counsel fail to raise an Ex Post Facto challenge to his convictions under 18 U.S.C. § 1028A, a statute enacted in 2004, after his scheme commenced in 1996. However, all of the specific § 1028A counts occurred on or after November 22, 2006. Thus, there is no Ex Post Facto issue. That defendant's overall scheme started before § 1028A was enacted does not create a violation of the Constitution.

Petitioner's fourth ground for relief also fails.

### 5. Ground 5: Unconstitutional Search and Unlawful Arrest

Finally, petitioner alleges that his conviction was obtained by use of evidence obtained pursuant to an unconstitutional search and unlawful arrest. (Motion Attach. 1 at 3, Ground 5.) Petitioner did not raise a Fourth Amendment claim when the case was in the district court originally, which means that he can do so now only on a showing of "cause and prejudice." See, e.g., Sandoval v. United States, 574 F.3d 847, 850-51 (7th Cir. 2009).[18]

As discussed above, petitioner does allege ineffective assistance of counsel based in part on his lawyers' failure to file a pre-trial motion to suppress. However, as also discussed above, he fails to flesh out that claim; he does not indicate that the contentions set forth in his fifth ground for relief provide the basis for his earlier ineffective assistance/suppression claim. Nor does he allege ineffective assistance as cause for the default of a Fourth Amendment claim. In any event, even if he could overcome these impediments to relief, petitioner fails to establish any violation of his Fourth Amendment rights.

_____

[18]As discussed earlier, petitioner's appellate counsel did mention the issue on direct appeal, concluding that it was better raised collaterally as an attack on trial counsel's performance. 2012 WL 1950408, at *1.

20

Petitioner states that he was arrested on January 12, 2009, taken to three different facilities, and not seen by an attorney or any other judicial personnel.  He was released four days later.  A state prosecutor apparently decided not to issue charges on January 14, but a search warrant was issued on January 15 while he remained in custody.  Petitioner further states that Inspector Girardot said that he assisted with the arrest, but records show the arresting agency was the UW Milwaukee police, assisted by the Milwaukee County Sheriff.  (Motion Attach. 1 at 3, Ground 5.)  Theft and other charges related to his January 12, 2009 arrest are listed in the PSR, with the disposition of "no prosecution" on January 14, 2009. (PSR ¶ 95.)

Petitioner does not explain how these events amount to a constitutional violation requiring suppression of evidence, and the court need not develop his argument for him.  To the extent that his allegations might hint at a McNabb-Mallory claim, the record shows that he was arrested on state charges.  See United States v. Alvarez-Sanchez, 511 U.S. 350 (1994).  He also fails to specify when during his detention he made any statements that might be subject to suppression.  This also dooms any claim of a Riverside violation, even assuming that suppression is the proper remedy for such a violation.  See United States v. Sholola, 124 F.3d 803 (7th Cir. 1997).  Nor does he explain how the search warrant was in any way defective or based on his allegedly unlawful arrest.  Finally, the Seventh Circuit explained on direct appeal that neither the search of petitioner's belongings on his arrest, nor the later search of his home pursuant to the warrant, were problematic.  2012 WL 1950408, at *1.

For all of these reasons, petitioner's fifth claim also fails.

21

## III. CONCLUSION

**THEREFORE, IT IS ORDERED** that petitioner's motion is **DENIED**, and this case is **DISMISSED**. The Clerk is directed to enter judgment accordingly.[19]

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the district court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2255 petitioner. In order to obtain a COA, the petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard for making a "substantial showing" is whether reasonable jurists could debate whether the motion should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons stated above, petitioner cannot make such a showing, so I decline to issue a COA.

Dated at Milwaukee, Wisconsin, this 13th day of September, 2012.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge

_____

[19]In his memorandum, petitioner requests appointment of counsel. Under 18 U.S.C. § 3006A(a)(2), the court may appoint counsel for a § 2255 petitioner if "the interests of justice so require." The court must appoint counsel if it determines that an evidentiary hearing is required to decide the motion, Rule 8(c) of the Rules Governing Section 2255 Proceedings, or if counsel is necessary for effective discovery, Rule 6(a) of the Rules Governing Section 2255 Proceedings. Because this claim fails to survive Rule 4 screening, counsel is not required, and given the conclusory nature of the claims the interests of justice do not support the permissive appointment of counsel. Petitioner also requests an evidentiary hearing, but for the reasons stated above he fails to qualify for one.